**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 13-23988-CIV-WILLIAMS/TURNOFF**

| | |
|---|---|
| KAYME MARQUEZ and all others similarly situated under 29 U.S.C. 216(B) | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| ALBERTO SUAREZ d/b/a CUATRO CAMINOS CAFETERIA | ) ) ) |
| Defendants | ) ) ) |
| _____ | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT**

Comes Now Plaintiff, by and through undersigned counsel and hereby files Plaintiff's

Response in opposition to Defendant's Motion for Summary Judgment and in Support thereof

states as follows:

**Introduction:**

1. Defendant's Motion for Summary Judgment contends that the Defendant business is not

   an enterprise covered under the FLSA as the Corporate Defendant did not gross over

   $500,000 annually for the years 2010, 2011, 2012 and 2013.

2. In support thereof Defendant has signed a declaration under the penalty of perjury that his

   business did not have gross sales or business done in excess of $500,000 for the years

   2011, 2012 and 2013 (relevant time period) and attached his income tax returns for the

   years 2009, 2010, 2011 and 2012. Defendant's income tax returns were not provided to

   the Court for the years 2013 and said income tax return was not provided to Plaintiff's

   Counsel during the course of discovery,

3.  In section "C" of said tax returns Defendant lists the following items for gross sales, cost of goods, contract labor and wages:

|  | 2010 [DE 27 P. 9] | 2011 [DE 27 P. 15] | 2012 [DE 27 P. 22] |
|---|---|---|---|
| Gross Sales | $58,055 | $62,090 | $61,405[1] |
| Cost of Goods | $24,310 | $29,290 | $24,090 |
| Contract Labor | $0 | $0 | $0 |
| Wages | $15,260 | $14,787 | $14,787 |

4.  Throughout this response, Plaintiff will draw comparisons to the case of *Turcios v. Delicias Hispanas Corp.,* 275 F. App'x 879 (11th Cir. 2008) whereby the Defendant restaurant stated that it had gross sales of $79,168.00 on its income tax returns *Id.* at 882. In analyzing the income tax returns, the Eleventh Circuit made the following observations:

> (1) Turcios submitted a sworn affidavit that defendant Patricia Ortega had admitted to her that the restaurant had earned over $10,000 weekly; (2) Delicias Hispanas was operated as a cash-only restaurant with no documentation of its gross revenue; (3) Delicias Hispanas's 2006 tax return indicated that the restaurant had gross receipts of $79,168, which would suggest an approximate weekly gross revenue of $1500; (4) the 2006 tax return also indicated that the restaurant operated at a net loss of $6,761, but failed to include cost of labor in the cost of goods sold, suggesting an even greater net loss than reported; (5) Turcios's weekly salary for 80 hours of work was $700, almost half the restaurant's estimated weekly gross receipts; (6) the restaurant employed at least two waitresses; and (7) the restaurant contained between fifteen and twenty tables, was open seven days a week from 8:00 am until at least 10:00 p.m., and served breakfast, lunch and dinner

*Turcios v. Delicias Hispanas Corp.,* 275 F. App'x 879, 882-83 (11th Cir. 2008).

---

[1] Exhibit "H" submitted by Defendant to the Florida department of revenue indicates gross sales for 2012 was $61,465.36 a slightly number than reported on the income tax return.

5.  In responding to Defendant's Motion for summary judgment[2], Plaintiff will demonstrate that Defendant's declaration in support of his motion, as well as his yearly income tax returns are false. Thereafter, Plaintiff will provide evidence to the Court that Defendant's business is an all cash business that had gross sales in excess of $500,000 annually.

### Facts:

6.  Dividing Defendant's gross sales over a 52 week period would give Defendant weekly gross sales as follows: 2010: $1,116.44, 2011: $1,194.03 and 2012: $1,180.86. Put another way, Defendant's average monthly gross sales were $4,837.91 in 2010, $5,174.16 in 2011 and $5,117.08 in 2012.

7.  Defendant's filing of their quarterly Federal Tax Return in form 941 and Defendant's filing of their quarterly UCT-6 form with the Florida Department of Revenue [Exhibit A] demonstrate that nearly the entire restaurants wages ($15,260 in 2010, $14,787 in 2011, and $14,787 in 2012) were paid directly Defendant Alberto Suarez and his wife Zoila Suarez:

    a)  In 2010 Defendant reported paying employee wages in the amount of $3,679 ($2,340 to Alberto and $1,339 to Zoila) for the first quarter, $3,499 ($2,160 to Alberto and $1,339 to Zoila) in the second quarter, $3,499 ($2,160 to Alberto and $1,339 to Zoila) in the third quarter, and $3,499 ($2,160 to Alberto and $1,339 to Zoila) in the fourth quarter. Therefore both Alberto and Zoila earned

---

[2] The Court previously denied Plaintiff's Motion pursuant to Fed R. Civ. Proc. 56 (d)(1) and (2) to allow Plaintiff the full opportunity to conduct discovery and the Court limited Plaintiff to written discovery. As such, Plaintiff did not have the opportunity to depose any witnesses such as co-workers that are currently employed by Defendants, did not have the opportunity to depose Defendant's accountant nor did Plaintiff's Counsel have the opportunity to inspect Defendant's premises as discovery was limited to written discovery.

a combined $14,176 for the year 2010 as reported in form UCT-6 to the Florida Department of Revenue and form 941 to the internal revenue service and in Defendant's income tax returns. This leaves a total of $1,084 in employee wages to the remaining employees that worked for Defendant.

b) In 2011 Defendant reported paying employee wages in the amount of $3,499 ($2,675 to Alberto and $824 to Zoila) for the first quarter, $3,499 ($2,160 to Alberto and $1,339 to Zoila) in the second quarter, $3,499 ($2,160 to Alberto and $1,339 to Zoila) in the third quarter, and $3,499 ($2,160 to Alberto and $1,339 to Zoila) in the fourth quarter. Therefore both Alberto and Zoila earned a combined $13,996 for the year 2011 as reported in form UCT-6 to the Florida Department of Revenue and form 941 to the internal revenue service and in Defendant's income tax returns. This leaves a total of $791 in employee wages to the remaining employees that worked for Defendant.

c) In 2012 Defendant reported paying employee wages in the amount of $3,499 ($2,160 to Alberto and $1,339 to Zoila) for the first quarter, $3,499 ($2,160 to Alberto and $1,339 to Zoila) in the second quarter, $3,499 ($2,160 to Alberto and $1,339 to Zoila) in the third quarter, and $3,499 ($2,160 to Alberto and $1,339 to Zoila) in the fourth quarter. Therefore both Alberto and Zoila earned a combined $13,996 for the year 2012 as reported in form UCT-6 to the Florida Department of Revenue and form 941 to the internal revenue service and in Defendant's income tax returns. This leaves a total of $791 in employee wages to the remaining employees that worked for Defendant.

8. In the present case, Plaintiff's Counsel propounded discovery on Defendant and requested that Defendant provide a list of the daily wages paid to 13 of its daily employees as well as any other employees that worked for Defendant that had not been listed. [Exhibit B]. In order to help Defendant in responding to said interrogatory, Plaintiff provided Defendant with a calendar of the entire relevant period. Although Defendant refused to answer said interrogatory on a daily basis as requested, Defendant did agree to provide the average of the approximate daily wages earned by Defendant's employees during the relevant period. Said response established that the following 12 employees earned as follows: (1) Yurami Duran $300 a week; (2) Edulvis Matos Mendoza $30 a day; (3) Yanine Mena $230 a week; (4) Ania Gomez $300 a week; (5) Maria Alvarez $30 a day; (6) Eva (unknown last name) $30 a day; (7) Miriam (unknown last name) $30 a day; (8) Luis Hernandez $210 a week; (9) Armando (unknown last name) $300 a week; (10) Deibis Mateo $30 a day; (11) Kayme Marquez $30 a day (exhibit D) and (12) Daniel (unknown last name) $360 per a week [Exhibit C]. Therefore, without taking into account the amount paid to Alberto Suarez, Zoila Suarez or any of the employees that were paid on a daily basis, and just factoring in the employees that were paid on a weekly basis ($1,700), Defendant was operating at a weekly net loss of $583.56 in 2010, $505.97 in 2011 and $519.14 (average weekly gross sales in 2010: $1,116.44, 2011: $1,194.03 and 2012: $1,180.86). Furthermore, said loss doesn't factor in any of Defendant's other costs such as monthly rent, cost of goods or utilities. Per Defendant's interrogatory responses, the monthly rent for Defendant's business was $1,900 a month or $438.46 a week ($1,900 multiplied by 12 and divided by 52 weeks) [Exhibit C response to interrogatory #3].

9. Furthermore, factoring in the wages paid to 6 employees at $30 a day, and assuming they only worked 5 days a week and not more as alleged by Plaintiff, Defendant would be paying an additional $900 a week in wages which would cause Defendant to suffer an even greater weekly net loss as Defendant would be paying a minimum of $2,600 a week in wages, plus an additional $438.46 in rent. Therefore, without even considering the amount of wages paid to Alberto or Zoila Suarez, without factoring the actual cost of goods, without factoring the cost of utilities or other expenses, Defendant operated on a weekly net loss in 2010 of $1,922.02 (weekly sales of $1,116.44 - $3,038.46 in wages and rent) or yearly loss of $99,945.04, weekly net loss in 2011 of $1,844.43 (weekly sales of $1,194.03 - $3,038.46 in wages and rent) or yearly loss of $95,910.36, and weekly net loss of $1,857.60 (weekly sales of $1,180.86 - $3,038.46 in wages and rent) or yearly loss of $96,595.20. Of course when factoring in all the other expenses, the weekly and yearly losses are far greater.

10. Notwithstanding the above, and in an effort to give Defendant an opportunity to shed light on the amount of gross sales that was really done, Plaintiff propounded an interrogatory with an attached calendar of the relevant time period [Exhibit B] and requested that Defendant list the gross sales done on a daily basis from October 1, 2010 through December 31, 2013. Defendant responded as follows [Exhibit C response to interrogatory #2]:

> Objection- This interrogatory is requesting that Defendant list the daily gross sales done on a daily basis to be listed on a calendar which Plaintiff has attached to these interrogatories. That means that Defendant would have to make 1095 entries (one for each day for 3 years) and as such, this interrogatory is overbroad, unduly burdensome, and made for the purpose of annoyance and harassment. **Notwithstanding same, unknown at this time. [Emphasis added].**

11. The undersigned did not believe said interrogatory to be overbroad, unduly burdensome or made for the purpose of annoyance or harassment in light of the fact that Defendant has challenged Plaintiff's allegation that Defendant's business had over $500,000 in annual sales. Perhaps, it was difficult to provide accurate responses in light of the fact that Defendant's business was open 24 hours a day, 7 days a week, 365 days a year with the exception of an early closing on Christmas Eve [Marquez affidavit para. 5 and 9, Mateo affidavit para. 4 and 8], or perhaps because this is an all cash business that never accepted credit card payment [Marquez affidavit para. 12, Mateo affidavit para. 10].

12. While Defendant as failed to provide his income tax return for the year 2013, Defendant's reported sales seem to be in line with the previous years. For example, Defendant reported gross sales for the year 2012 in his income tax  return as $61,405 (exhibit "H" indicates that it may have been $60 higher at $61,465.36 as reported to the Florida Department of revenue) and similarly reported gross sales to the Florida Department of Revenue for the year 2013 as $62,176.38 [Exhibit "I"]. During discovery, Defendant's provided some of their receipts that they saved for the purchase of goods or cost of goods. Although it appears that receipts are missing for many of the months, for the receipts that were produced Plaintiff's Counsel calculated the receipts to total $53,845.82.[3] Therefore, when deducting the cost of goods from the gross sales, Defendant is left with a total of $8,330.56. However, in 2013 Defendant paid himself and Zoila Suarez a combined total of $12,657 [Exhibit "J"] for a net loss of $4,326.44. Taking in the cost of rent, payment of employee wages and payment of utilities would net

---

[3] Said calculation gave Defendant the benefit of the doubt and did not calculate illegible receipts or any receipts that appeared to be duplicate or returned item. Documents 1-117 were calculated at $15,542.11 and documents 360-604 were calculated at $38,303.71 for a total of $53,845.82.

a similar result to the years 2010, 2011 and 2012 whereby Defendant would be netting a loss in excess of $100,000.

13. Despite what appears to be astronomical losses incurred by Defendant on a yearly basis, after paying himself and his wife, Defendant reported a net loss of only $245 in 2010 [D.E. 27-1, page 9, L. 29], a net profit of $253 in 2011 and a net loss of $1,589 in 2012.

14. Defendant's income tax returns have been proven to be highly suspect and inaccurate. Furthermore, Defendant when afforded the opportunity to state what his gross sales were, stated that it was unknown at this time. It was unknown to Defendant at this time despite the fact that the parties had been litigating this case for several months, despite the fact that he reported his alleged monthly sales to the Florida Department of Revenue on a monthly basis, despite filing income tax returns stating his gross sales and despite filing an affidavit with the Court stating what his gross sales were.

15. In contrast, Plaintiff, can provide a calculation as to the amount of sales done per a shift and per a day and for the year. Deibis Mateo, a former employee of Defendant, conservatively estimates that Defendant's business has gross sales of $1,700 a day or $620,500 a year [Mateo affidavit para. 8]. Plaintiff, approximates that based upon her experience working for Defendant, Defendant's business had daily gross sales of $1,850 a day and approximately $675,250 a year [Marquez affidavit para. 9].

16. Lastly, Defendant's income tax returns do not take into consideration any settlement or attorney's fees paid in case no. 11-20793 filed in the Southern District of Florida in which Defendant was sued for unpaid wages under the Fair Labor Standards Act.

<u>**Memorandum of Law**</u>

A.      <u>**SUMMARY JUDGMENT STANDARD.**</u>

"Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial."" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). Accepting this evidence as truthful, the Court must view the record and all factual inferences there from in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (citing First *Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288 (U.S. 1968)); *see also Anderson*, 477 U.S. at 247-48 ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact"). In the present case, there are genuine issues of material fact to preclude the entry of summary judgment in favor of Defendant and as a result Defendant's Motion for Summary Judgment must be denied in its entirety.

**B. Jurisdiction:**

While Defendant's mistakenly coin this issue as a challenge to this Court's subject matter jurisdiction, other Court interpreting the United States Supreme Court decision of *Arbaugh v. Y&H Corp.,* 546 U.S. 500 (2006) found that an attack on whether the Defendant corporation is an enterprise under the FLSA is not an attack on this Court subject matter jurisdiction to hear the case.  As articulated by Judge O'Sullivan of this District in *Rodriguez v. Diego's Rest., Inc.*, 619 F. Supp. 2d 1345 (S.D. Fla. 2009) an attack on individual or enterprise coverage is not an attack on this Court's subject matter jurisdiction:

> This Court is persuaded by the reasoning in *Arbaugh* that the requirement that a plaintiff establish individual or enterprise coverage is not jurisdictional. For individual coverage under the FLSA to apply, a plaintiff must show that he or she is (1) engaged in commerce or (2) engaged in the production of goods for commerce. See 29 U.S.C. § 207(a)(1). For enterprise coverage to apply, the enterprise must be engaged in commerce under the statute and must gross over $ 500,000 annually. See 29 U.S.C. § 203(s)(1)(A)(i)-(ii). Section 216 of the FLSA states, in part, that "[a]n action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216 (b). Nothing in section 216(b) or any other provision of the FLSA indicates that Congress intended that the individual coverage or enterprise coverage restrictions be jurisdictional. Accordingly, the Court must apply the bright line rule articulated in *Arbaugh* and find that individual or enterprise coverage under the FLSA is an element of a plaintiff's claim for relief, not a jurisdictional threshold. See *Arbaugh*, 546 U.S. at 516.

*Rodriguez v. Diego's Rest., Inc.,* 619 F. Supp. 2d 1345, 1350 (S.D. Fla. 2009). Therefore, Defendant's cannot challenge this Court's subject matter jurisdiction on the basis that there is no enterprise coverage as the Court in *Rodriguez* explained:

> The Supreme Court did not limit its holding in *Arbaugh* to Title VII cases. In fact, it articulated a bright line rule that "when Congress does not rank a statutory limitation on coverage as jurisdictional,

courts should treat the restriction as nonjurisdictional in character." *Arbaugh*, 546 U.S. at 516. Several courts have applied the *Arbaugh* bright line test in the context of the FLSA. See *Chao v. Hotel Oasis, Inc.*, 493 F. 3d 26, 31-32 (1st Cir. 2007) (relying on *Arbaugh* and finding that the $500,000 minimum gross sales element of the FLSA was not jurisdictional); *Branham v. Halsted Home Rental, LLC*, No. 07-1133-M, 2008 U.S. Dist. LEXIS 29837, 2008 WL 1745825, *2 (W.D. OK Apr. 11, 2008) (denying motion to dismiss under Rule 12(b)(1) finding that the FLSA allegations in the amended complaint were elements of the plaintiffs' claims for relief, not a jurisdictional issue); *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc*., No. 08:07-cv-2359-T-23TGW, 2008 U.S. Dist. LEXIS 23007, 2008 WL 793660, *1 n. 2 (M.D. Fla. Mar. 24, 2008) ("the FLSA's description of an employee and an enterprise covered by the statute prescribes the elements necessary to state a claim for relief under the FLSA, not the prerequisites to federal jurisdiction); *Jiang v. Lee's Happy House,* No. C07-03606, 2007 U.S. Dist. LEXIS 80861, 2007 WL 3105087, *3 (N.D. CA Oct. 23, 2007) (finding "there is nothing in the statutory provisions on which the defendants rely that plainly expresses a Congressional intent for those provisions to be jurisdictional. It may very well be that to prevail on his FLSA claim, [the plaintiff] will have to plead and prove the [defendant] falls within those provisions, but the Court has jurisdiction to hear the claim, whether or not [the plaintiff] ultimately can prevail.").

*Rodriguez v. Diego's Rest., Inc.,* 619 F. Supp. 2d 1345, 1350-1351 (S.D. Fla. 2009). See *Turcios v. Delicias Hispanas Corp.,* 275 F. App'x 879, 882 (11th Cir. 2008) ("In short, the sections of the FLSA that provide the substantive relief, § § 206 and 207, are intertwined with and dependent on the section of the FLSA that defines the scope of the FLSA, § 203"). It is apparent from said cases that the merits of an FLSA case are intertwined with whether Defendant grossed over $500,000 annually and that the two cannot be separated. The facts necessary to prove Plaintiff's overtime or minimum wage claim are usually simultaneously linked to establishing enterprise coverage. An example of this can be found in *Turcios* whereby the Eleventh Circuit looked at all the surrounding factors such as the hours of operation of the Defendant restaurant, the days of

the week the restaurant was open, how many employees worked at the Defendant restaurant, how many tables did the restaurant have and the employees weekly salary among other factors.

In the case at hand, it is evident from Defendant's filing with the internal revenue service, and the Florida Department of Revenue that Defendant did not disclose approximately 12 other employees working for him on a daily basis and just as likely did not report all the cash sales, but rather a fraction of the sales or roughly ten percent of the actual sales per the affidavits of Plaintiff and Deibis Mateo.

**C.  Tax Returns Are Untrustworthy:**

While Defendant attempts to rely on a self serving affidavit and tax returns, other Court's have been reluctant to rely on tax returns or affidavits on dispositive issues such as whether Defendant's gross sales exceeded $500,000.

> There is substantial precedent suggesting that tax returns are not dispositive and the veracity of those documents can be questioned by a Plaintiff. *See, e.g., Monterossa v. Martinez Rest. Corp.,* 2012 WL 3890212, at *3 (S.D.N.Y. Sept. 7, 2012); *Li v. Cheng,* 2012 WL 1004852, at *5 (E.D.N.Y. Mar. 23, 2012). Furthermore, there is substantial precedent suggesting that factors other than tax returns are relevant in determining whether the $500,000 threshold is met. *See, e.g., Boekemeier v. Fourth Universalist Soc'y in the City of New York,* 86 F.Supp.2d 280, 282–83 (S.D.N.Y.2000); *Solis v. Cindy's Total Care, Inc.,* 2012 WL 28141, at *13 (S.D.N.Y. Jan. 5, 2012); *Francois v. Fried Green Tomatoes,* 306 Fed.Appx. 443, 445 (11th Cir.2008).

*Jia Hu Qian v. Siew Foong Hui*, 2013 WL 3009389 (S.D.N.Y. June 14, 2013).

In *Garcia v. Serpe*, 2012 WL 380253 (D. Conn. Feb. 6, 2012) Defendant filed a self serving affidavit that the corporation did not gross over $500,000 annually and only produced their tax returns after they moved for summary judgment.

> The Court is not persuaded that Mr. Serpe's self-serving and conclusory affidavit is sufficient evidence to warrant granting summary judgment on the basis that the Defendant LLCs did not

meet the $500,000 threshold under the FLSA. *See Gonzalez,* 2007 WL 869583, at *7 (disregarding owner's "self-serving and conclusory" statement that "I have never grossed $500,000 per year" as a basis for granting summary judgment "particularly in light of the defendants' selective reliance on tax returns").

*Garcia v. Serpe*, 2012 WL 380253 (D. Conn. Feb. 6, 2012). The Court went on to state:

> Although Defendants have not relied on any underlying financial documentation in support of their motion for summary judgment on this point, Plaintiffs have submitted evidence demonstrating that the Defendant LLCs significantly understated their income on their tax returns. Plaintiffs have asserted that the Defendant LLCs would routinely receive large amounts of cash up to $100,000 from its customers that would not be reported and that the Defendant LLCs did not report the true amount of wages worked by the Plaintiffs on their tax forms. In addition, Mr. Serpe admitted in his deposition that he would often receive cash from some of his customers. When viewing these facts in the light most favorable to the Plaintiffs, a reasonable jury could conclude that any of the Defendant LLCs had gross annual sales of $500,000 or more in any given year during the relevant periods even in light of Mr. Serpe's affidavit to the contrary. *See Francios v. Fried Green Tomatoes, Inc.,* 306 Fed. Appx. 443, 445 (11th Cir.2008) (finding that the question of whether employer had gross annual revenues of 500,000 or more was for the jury where the employer conceded that some sales were unreported and the actual amount of those undisclosed sales was uncertain. "The jury thus had to determine whether there was enough evidence to show that the restaurant's cumulative unreported sales would cover the difference between the reported gross revenues and the $500,000 FLSA threshold.").

*Garcia v. Serpe*, 2012 WL 380253 (D. Conn. Feb. 6, 2012).

In *Francois v. Fried Green Tomatoes, Inc.,* 306 F. App'x 443 (11th Cir. 2008) Defendants presented their ledgers that showed gross sales were under $500,000. Plaintiff contested these figures on the basis that not all sales were accounted for and that several employees were paid off the books. The jury agreed with Plaintiff and found that the gross annual sales exceeded $500,000. The Eleventh Circuit found the $500,000 to be a question for the jury and did not disturb the jury verdict.

Likewise, in *Turcios v. Delicias Hispanas Corp.,* 275 F. App'x 879, 882-83 (11th Cir. 2008), the Eleventh Circuit analyzed the $500,000 threshold in a restaurant that claimed to only have gross sales of $79,168, or just over $1,500 a week ($215 a day),  but paid Plaintiff an average of $700 a week, equivalent to half of the gross sales, was a cash only business that was open from 8:00 a.m. to 10:00 p.m. seven days a week [Exhibit "K"]:

> (1) Turcios submitted a sworn affidavit that defendant Patricia Ortega had admitted to her that the restaurant earned over $10,000 weekly; (2) Delicias Hispanas was operated as a cash-only restaurant with no documentation of its gross revenue; (3) Delicias Hispanas's 2006 tax return indicated that the restaurant had gross receipts of $79,168, which would suggest an approximate weekly gross revenue of $1500; (4) the 2006 tax return also indicated that the restaurant operated at a net loss of $6,761, but failed to include cost of labor in the cost of goods sold, suggesting an even greater net loss than reported; (5) Turcios's weekly salary for 80 hours of work was $700, almost half the restaurant's estimated weekly gross receipts; (6) the restaurant employed at least two waitresses; and (7) the restaurant contained between fifteen and twenty tables, was open seven days a week from 8:00 am until at least 10:00 p.m., and served breakfast, lunch and dinner

*Turcios v. Delicias Hispanas Corp.,* 275 F. App'x 879, 882-83 (11th Cir. 2008). In the present case there are approximately 12 unaccounted for employees in Defendant's income tax returns compared to the two employees *Turcios,* the hours of operation are considerably longer than in *Turcios*, however like *Turcios* Defendant's have no documentation as to  their daily sales and the few receipts that were provided indicate that the cost of goods is drastically larger than what was reported in the income tax returns. Furthermore, as noted above, if the reporting of Defendant's gross sales were accurate, the net loss suffered by Defendant on a yearly basis would be so significant and drastically higher than anything the Court in *Turcios* had envisioned, especially considering there are at least 10 additional employees in the present case compared to *Turcios.*

Furthermore, although Defendant when presented with the opportunity to state what his daily gross wages were for his business, stated that he didn't know which underscores the unreliability of his affidavit in support of Defendant's Motion for Summary Judgment. However, in support of Plaintiff's Response in Opposition, Plaintiff as well as one of Defendant's former employees stated unequivocally based upon their experience and knowledge of Defendant's business that Defendant had gross sales in excess of $500,000 annually.

Plaintiff would compare the employer's obligation to maintain proper records of gross sales to that of the employer's obligation to maintain time records under *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946). The information related to gross sales would often be in the hands of the Defendant *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.,* 8:07-CV-2359T23TGW, 2008 WL 793660 (M.D. Fla. Mar. 24, 2008). However, just like where a Defendant has failed to maintain time records a Plaintiff can rely on his testimony to carry his burden, likewise when an employer/Defendant fails to maintain records of gross sales, a Plaintiff/employee has carried his/her burden by testifying as to the gross sales or business done. Otherwise, it would leave every employee with no recourse for a Defendant that files fraudulent tax returns as in the present case.

Wherefore, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment and reopen discovery so that Plaintiff can take adequate discovery including the taking of depositions.

## <u>Response to Defendant's Statement of Undisputed Facts:</u>

1. Admitted.

2. Denied. [Mateo affidavit para. 8, Marquez affidavit para. 9]. Additionally, see Defendant's interrogatories on underreporting wages.

3. Denied. [Mateo affidavit para. 8, Marquez affidavit para. 9]. Additionally, see Defendant's interrogatories on underreporting wages.

Respectfully submitted,

Daniel T. Feld, Esq.
J. H. Zidell, P.A.
Attorneys for Plaintiff
300-71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167

By:__/s/ Daniel T. Feld_____
    Daniel T. Feld, Esq.
    Florida Bar No.: 0037013

## CERTIFICATE OF SERVICE:

I hereby certify that a true and correct copy of the foregoing Plaintiff's Response was sent via CM/ECF to Rafael Viego III, Esq., 4300 Biscayne Blvd., Suite 305, Miami, Florida 33137, Fax: , Fax: (305) 717-7530, Email: rviego@ejtrial.com on this 10th day of July 2014.

Daniel T. Feld, Esq.
J. H. Zidell, P.A.
Attorneys for Plaintiff
300-71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167

By: _/s/_Daniel T. Feld _____
    Daniel T. Feld, Esq.
    Florida Bar Number: 003