UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**CASE NO.: 13-23988-CIV-WILLIAMS/SIMONTON**

KAYME MARQUEZ and all others similarly )
situated under 29 U.S.C. 216(b), )
)
    Plaintiff, )
)
v. )
)
ALBERTO SUAREZ d/b/a CUATRO )
CAMINOS CAFETERIA, )
)
    Defendant. )
_____ )

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ENTERPRISE COVERAGE [DE 92]**

Defendant ALBERTO SUAREZ d/b/a CUATRO CAMINOS CAFETERIA ("**Defendant**"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby responds in opposition to Plaintiff KAYME MARQUEZ's ("**Plaintiff**") Motion for Summary Judgment on the Issue of Enterprise Coverage (the "**Motion for Summary Judgment**") and in support states as follows:

**I.
INTRODUCTION**

1. Plaintiff has filed a Motion for Summary Judgment on the issue of enterprise coverage claiming Defendant's employees handled goods that were moved in interstate commerce and that Defendant generated more than $500,000 annual gross volume of sales.

2. In support of the Motion for Summary Judgment, Plaintiff primarily relies on the following:

    a. Defendant's memory loss;

– 1 –
JOMARRON | LOPEZ
ATTORNEYS AT LAW

    b. Plaintiff's own self-serving affidavit; and

    c. The Affidavit of Deibis Mateo.

3. However, as further outlined below and in Defendant's Statement of Material Facts in Opposition to the Motion for Summary Judgment (and exhibits thereto) [DE 97], there exists genuine issues of material fact that preclude the granting of the Motion for Summary Judgment.

## II.
## MEMORANDUM OF LAW

The Court must consider all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolve all reasonable doubts against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Although the Court is not required to accept all of the nonmovant's factual characterizations and legal arguments, if material issues of fact exist, the Court must not decide them but rather must deny the motion and proceed to trial. *Envtl. Def. Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir. 1981). In contrast, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson,* 477 U.S. at 255. As further stated in *Clemens v. Doughty County*

> All reasonable doubts about the facts should be resolved in favor of the non-movant. If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.*

684 F.2d 1365, 1368–69 (11th Cir.1982).

An employee is entitled to minimum wage and time-and-a-half overtime pay if he or she is employed by "an enterprise engaged in commerce," as defined by section 203(s)(1)(A)(i)-(ii) of

the statute. Section 203(s)(1)(A)(i)-(ii) of the FLSA provides in relevant part that an "[e]nterprise engaged in commerce or in the production of goods for commerce" means an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) . . . .

29 U.S.C. § 203(s)(1)(A)(i)-(ii). Thus, for an enterprise to be "engaged in commerce" for purposes of "enterprise coverage," a business must have employees handling goods or materials that have been moved in interstate commerce *and* must have annual gross volume of sales or business done in excess of $500,000. *See* 29 U.S.C. § 203(s)(1)(A); *Sandoval v. Florida Paradise Lawn Maintenance, Inc.*, 2008 WL 5250274, (11th Cir. 2008), aff'g *Sandoval v. Florida Paradise Lawn Maintenance, Inc.*, 2008 WL 1777392 * 5–6 (S.D. Fla. 2008).

<u>A.</u>
<u>NO RECORD EVIDENCE OF GOODS OR MATERIALS
THAT HAVE BEEN MOVED IN COMMERCE</u>

Plaintiff has not produced any record evidence of items that were produced out of Florida and provides only conclusory allegations to support its assertion that Defendant's had two or more employees handling goods that traveled through interstate commerce. Federal Rule of Civil Procedure 56(c) states:

> A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials: or

>   (B) showing that that materials cited do not establish the absence or presence of a genuine dispute, or that adverse party cannot produce admissible evidence to support the fact.

Additionally, "conclusory allegations without specific supporting facts have no probative value." *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (citing *Gordon v. Terry,* 684 F.2d 736, 744 (11th Cir.1982). In the Motion for Summary Judgment, Plaintiff makes the conclusory statement that "Defendant obtained cigarettes from cigarette brands that are not produced in Florida." However, Plaintiff has produced no supporting evidence to support said statement; Plaintiff does not rely on any depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials indicating where the cigarette brands were made; nothing. Plaintiff does cite to Plaintiff's Discovery Reponses [*See* [DE 92-1, ¶ 14)], however, Defendant's response merely provided a list of vendors, and what was bought from that vendor. Plaintiff conducted no discovery as to the origin of the products or whether they were moved in interstate commerce. Similarly, Plaintiff has not presented any evidence regarding the location where Malboro, Winston, and Newport Cigarettes are assembled or produced in Florida.

Plaintiff also claims that it would be an unreasonable conclusion that that Big Lots!, Sedanos, and Jetro Cash & Carry sold items to Defendant that were not moved in interstate commerce. Again, Plaintiff's conclusions have no supporting evidence. The locations where Plaintiff purchased his products were located in Florida. (*See* [DE 92-1, ¶ 14]). At no point does Plaintiff present any kind of record evidence that shows the items bought by Defendant from its vendors moved in interstate commerce. Moreover, Plaintiff takes an erroneous position by claiming "the fact finder would have to believe that Big Lot!, Sedanos, and Jetro Cash & Carry, a wholesale membership club, all dealt in goods only produced intrastate, which would be

unreasonable." However, this the standard is not whether the vendor dealt with goods only produced intrastate; rather the standard is whether employees where "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce." 29 U.S.C. § 203(s)(1)(A)(ii). The only relevant inquiry is whether the products *purchased* by Defendant were moved interstate commerce and <u>not</u> whether the vendor who sold Defendant the products also dealt with *other products* that did move in interstate commerce.

## B. DEFENDANT'S BUSINESS DID NOT GENERATE ANNUAL GROSS REVENUE OF $500,000 OR MORE

Plaintiff fails to prove that Defendant's business, Cuatro Caminos Cafeteria (the "**Cafeteria**"), generated annual gross revenue of $500,000. *See Rodriguez v. Diego's Rest., Inc.*, 619 F. Supp. 2d 1345, 1350 (S.D. Fla. 2009) ("the Court … find[s] that individual or enterprise coverage under the FLSA is an element of a plaintiff's claim for relief, not a jurisdictional threshold). Plaintiff's Motion for Summary Judgment claims "evidence eliminates the possibility of a reasonable fact-finder finding that Defendant did not do $500,000 or more in business." (DE 92, pp 5). Plaintiff claims the "first key element" is that Defendant has no memory of any of the pertinent facts of his business because Defendant had no memory in his deposition. It is not surprising that Defendant's memory failed him because Defendant has been suffering from Alzheimer's since at least August of 2013, which has progressively become worse. (See [DE 97-1]). Notwithstanding, Defendant's memory issues, Plaintiff neglects to cite to Defendant's Sworn Declaration [DE 27-1] when his mental and physical health was better. In his Declaration, Defendant specifically noted that "My cafeteria never generated gross annual revenue in excess of $500,000.00 in 2009, 2010, 2011, and 20112 . . . ." (*See* [DE 27-1, ¶ 4]). Additionally, Defendant

also served verified answers to discovery before his deposition was taken when his memory was better which also indicated the Cafeteria made less than $500,000 annually.  (*See* [DE 97-2, ¶ 7).

Plaintiff also relies on the self-serving Affidavit of Plaintiff and on the Affidavit of Deibis Mateo ("**Mateo**").  Plaintiff claims she worked the cash register as part of her employment. (*See* [DE 92-3, ¶ 4]).  However, this is contradicted by Miriam Monteagudo ("**Monteagudo**") and Eva Rangel ("**Rangel**") both of whom were employees of Defendant, who allege Plaintiff never worked the cash register. (*See* [DE 97-3, 97-4]).  Rangel's Affidavit is particularly powerful because she worked for Defendant from 2008 through 2013. (See [DE 97-4, ¶ 2)

Second, Plaintiff cites to Mateo's Affidavit to support her calculations that the Cafeteria made $500,000 or more.  However, Mateo is not reliable.  For example, Mateo claims she worked over a year.  (*See* [DE 92-4, ¶ 2]) However, Rangel and Monteagudo claim Mateo worked 2–3 months. (See [DE 97-3, ¶ 7 ; DE 97-4, ¶  12.)

Third, Plaintiff and Deibis Mateo rely on inadmissible hearsay to support their claims about the amount of money they made during their shifts.  "A district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" *Macuba v. Deboer*, 193 F.3d 1316 (11th Cir. 1999)(citing *Wright v. Southland Corp*., 187 F.3d 1287 (11th Cir. 1999). "We believe that the courts have used the phrases '[R]educed to admissible evidence at trial' and 'reduced to admissible form' to explain that the out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose."  *See* Macuba, 193 F.3d at 1323.

In this case, both Plaintiff and Mateo rely on evidence that cannot be reduced to admissible evidence at trial or admissible form.  For example, Plaintiff states "After I moved to the morning

shift, I spoke with Miriam—a co-worker from the evening shift [3 pm to 11 pm] who worked the register—and she confirmed that the business continued to make that much money per day during that shift." (*See* [DE 92-3, ¶ 7].)  The alleged statement by Miriam is inadmissible. Importantly, Plaintiff has no personal knowledge of how much the Cafeteria made in the evening shift after she started the morning shift. As she stated in her Affidavit, Plaintiff only worked the evening shift for 4 months.  (*See* [DE 92-3, ¶¶6–7].) In contrast, Defendant does not rely on inadmissible hearsay evidence; rather, Defendant has submitted Rangel's Affidavit in which Rangel relies on personal knowledge. Specifically, Rangel states she would see the cash register tape for the sales done during the evening shift, which revealed the Cafeteria averaged $300 and not $500 as claimed by Marquez. (See [De 97-4, ¶ 6].)

Likewise, Mateos relies on inadmissible hearsay in determining how much the Cafeteria made during the morning shift (3 pm to 11 pm): "At the end of the shift, when tips were distributed, I would ask the cashier Edulvis Matos Mendoza how much the business made that day, and Ms. Mendoza would inform me of the number." (See [DE 92-4, ¶ 5]). Furthermore, although she claims to have personal knowledge, she states she only occasionally saw the register tape. *Id*.  In contrast, both Monteagudo and Rangel saw the register tapes more than just "occasionally." Montegagudo would review sales for the week and Rangel would view the register tapes approximately 4 times a week. [See [DE 97-3, ¶ 8; DE 97-4, ¶¶ 7, 8].)  Based on Monteagudo's and Rangel's Affidavit's, the Cafeteria did not receive an average of $650 during the morning shift (7 am to 3 pm) as claimed by Plaintiff and Mateos; rather, the Cafeteria would average gross sales of $350 during the morning shift. (See [DE 97-3; ¶ 9]; [DE 97-4, ¶ 7].)

Deibis Mateo relies on inadmissible hearsay in determining how much the Cafeteria made during the night time shift (11 pm–7 am.): "At the end of the night shift, I would ask the cashier

– 7 –
JOMARRON | LOPEZ
ATTORNEYS AT LAW

working at the time how much we made.  During that period, I recall the cashier's name being Yurami Duran, also nicknamed "La Flaca" or "The Skinny One" in English." (See [DE 92-4, ¶ 6].) While she claims she saw the register tape, she only worked at the Cafeteria for 2 months.  It cannot be reasonably inferred that the Cafeteria made the same amount of money for three more years as what it made for the two months Mateo worked.

Importantly, Monteagudo's and Rangel's affidavit dispute Plaintiff's and Mateo's calculation of the gross annual revenue the Cafeteria made.  The Cafeteria neither made $1,850 daily nor did it make $500,000 in gross annual revenue. The Cafeteria made approximately $1,000 per day, which when multiplied by 365 days in a year, equals to gross revenue of $365,000. (*See* [DE 97-3, ¶ 14; 97-4, ¶ 10].)   Even if a reasonable juror could infer that Defendant's tax returns are not accurate, the leap from $60,000 a year to $500,000 is too vast and a reasonable juror cannot infer, based on genuine issues of material fact presented, that the Cafeteria made half a million dollars in annual gross sales.

Based on the forgoing, Defendant's Statement of Material Facts in Opposition to Plaintiff's Motion for Summary Judgment [DE 97] (and all exhibits thereto), the record evidence, and taking all inferences in a light most favorable to Defendant, genuine issues of material fact exist as to whether enterprise coverage applies, and Defendant requests that the Court deny Plaintiff's Motion for Summary Judgment on the Issue of Enterprise Coverage.

Respectfully submitted,

By: /s/ Rafael Viego III
Rafael Viego III, Esq.
Florida Bar. No. 60967
**JOMARRON | LOPEZ**
*Counsel for Defendant*
4300 Biscayne Boulevard, Suite 305
Miami, Florida 33137
Telephone:   (305) 717-7530
Facsimile:    (305) 717-7539
E-mail:         rviego@jltrial.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of this document was served via CM/ECF this 7th day of April, 2016, upon: Jamie H. Zidell, Esq., Stephen Michael Fox, Jr., Esq., Joshua Sheskin, Esq., and Allyson Kutner Morgado, Esq., zabogado@aol.com.

By: /s/ Rafael Viego III
Rafael Viego III, Esq.
Florida Bar. No. 60967